UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FERNANDO FERNANDEZ and MARIA FERNANDEZ<br><br>　　　　　　Plaintiffs,<br>v.<br>UNITED STATES OF AMERICA, et al.,<br>　　　　　　Defendants. | Case No.: 10cv1387 AJB (PCL)<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS<br><br>[Doc. 33] |

Presently before the Court is Defendant's motion to dismiss Plaintiffs' First Amended Complaint. (Doc. No. 33.) The motion is not opposed. For the following reasons, the motion is GRANTED with leave to amend.

**I.**

**BACKGROUND**

This action arises out of several alleged instances in which Mr. and Mrs. Fernandez ("Plaintiffs") allege that they suffered emotional distress after agents of the Customs and Border Protection ("CBP") harassed their son, JRGF. (First Amended Complaint ¶¶ 14-47 ("FAC")). Plaintiffs claim that JRGF's first encounter with the CBP occurred in July or August 2008, when an agent observed JRGF and another teenager on a bicycle, and suspected them of guiding illegal aliens. (FAC ¶¶ 14-16.) The CBP agent followed JRGF for a few blocks before Mr. Fernandez arrived and confronted the agent. (FAC ¶ 16.) Mr. Fernandez refused to show his identification to the CBP agent. (FAC ¶ 16.) The agent

departed promptly after Mrs. Fernandez arrived. (FAC ¶ 16.) JRGF's second encounter with the CBP occurred on December 11, 2008, when another CBP agent observed JRGF on a bicycle and followed him for a few blocks, suspecting him of being an illegal alien and helping to smuggle undocumented immigrants. (FAC ¶ 22.) When JRGF arrived at his house, the CBP agent instructed JRGF to sit on the grass and present his identification. (FAC ¶ 22.) Another CBP agent arrived to assist, and both agents questioned JRGF about his immigration status. (FAC ¶ 22.) Plaintiffs also claim that the agents asked to see Mrs. Fernandez's identification. (FAC ¶ 23.) Mrs. Fernandez and JRGF continued to refuse to show the agents any identification, however, and the CBP agents left after bouts of yelling ensued. (FAC ¶¶ 24-25.)

The third alleged incident occurred on January 30, 2009, when a CBP agent told JRGF and JRGF's friend to get off of their bicycles. (FAC ¶ 28.) Plaintiffs claim that the agent proceeded to threaten JRGF with pepper spray, remove his school identification card, and beat JRGF on the head with a flashlight. (FAC ¶¶ 28-29.) JRGF then called Mr. Fernandez, who called to report the incident to the police department. (FAC ¶ 30.) Plaintiffs were not present when this alleged incident occurred and only learned of the incident when JRGF later called Mr. Fernandez. (FAC ¶ 30.) About two days later, two CBP supervisors went to the Plaintiffs' home. (FAC ¶ 33.) Mr. Fernandez explained the reasons why he thought the CBP agents were harassing his son. (FAC ¶ 33.) Mr. Fernandez became upset when the agents stated that they would continue to stop JRGF if they believed they had reason to question him. (FAC ¶ 33.) Later that afternoon, Mr. Fernandez became upset again when CBP agents questioned JRGF in downtown Calexico, demanded to see his identification, and performed a search for weapons. (FAC ¶ 34.)

Plaintiffs also allege that they suffered emotional distress when they later learned that CBP agents forcibly dragged JRGF out of a restaurant and questioned him in August 2009. (FAC ¶¶ 35-39.) Later that month, two CBP agents again observed JRGF standing on a corner in downtown Calexico. (FAC at ¶¶ 40-42.) The CBP agents stopped JRGF, asked for identification, and conducted a pat down search for weapons. (FAC ¶ 40.) JRGF was about to be released when Mr. Fernandez arrived to pick up his son. (FAC ¶ 41.) The CBP agents then mounted their bicycles and departed. (FAC ¶ 42.) As a result of these alleged incidents involving the CBP and Plaintiffs' son, Plaintiffs claim that they are

entitled to relief because they now "live in constant fear that CBP agents will again physically injure or harm JRGF and suffer from substantial emotional distress, and physical symptoms associated with emotional distress including becoming angry, discouraged and feeling helpless in their own home and neighborhood." (FAC ¶ 47.)

Plaintiffs filed an administrative claim with the CBP on December 16, 2009, seeking $5,000,000 in compensatory damages. (FAC ¶ 4). CBP denied their claims on May 24, 2010. (FAC ¶ 4.) Plaintiffs then filed this lawsuit on July 2, 2010. (Doc. No. 1). Plaintiffs amended their complaint on October 4, 2010, and the Defendant answered the First Amended Complaint on October 5, 2010. (Doc. Nos. 7 & 8). But on January 4, 2011, Plaintiffs' attorney withdrew from the case. (Doc. No. 17). Thereafter, Judge Moskowitz issued an order to show cause why JRGF's claims should not be dismissed. (Doc. No. 21). Plaintiffs responded to this order on March 7, 2011, but still failed to retain counsel for their son. (Doc. No. 22). On March 10, 2011, Judge Moskowitz renewed his order to show cause. (Doc No. 23). On March 14, 2011, this case was transferred to the calendar of Judge Battaglia. (Doc. No. 24.) After Plaintiffs failed to appear at the hearing on June 30, 2011, and still had not retained a new lawyer, Judge Battaglia dismissed JRGF's claims. (Doc. Nos. 27 & 28).

## II.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint upon a finding that the plaintiff has failed to state a claim upon which relief may be granted. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court may dismiss a complaint as a matter of law for: (1) "lack of cognizable legal theory," or (2) "insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted). However, a complaint survives a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Notwithstanding this deference, the reviewing court need not accept "legal conclusions" as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949–50 (2009). It is also improper for the court to assume "the [plaintiff] can prove facts that [he or she] has not alleged." *Associated Gen. Contractors of*

*Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 129 S.Ct. at 1950. The court only reviews the contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. *al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009) (citations omitted).

## III.
## DISCUSSION

The United States as sovereign is immune from liability except as it has consented to be sued. *United States v. Mitchell*, 445 U.S. 535, 538 (1980); *United States v. Testan*, 424 U.S. 392, 399 (1976). The terms of its consent specifically and narrowly define a district court's jurisdiction to entertain lawsuits against the government. *United States v. Sherwood*, 312 U.S. 584, 586 (1941). Under the Federal Tort Claims Act (FTCA), Congress has permitted the CBP and its federal agents to be sued. *See* 28 U.S.C. § 1346(b); *FDIC v. Meyer*, 510 U.S. 471, 478 (1994).

The FTCA provides for liability "to the same extent as a private individual under like circumstances," but precludes analogy to municipal law. 28 U.S.C. § 2674; *see United States v. Olson*, 546 U.S. 43, 45-46 (2005) (rejecting the municipal liability standard). Liability under the FTCA is determined according to the law of the state where the alleged wrong occurred. 28 U.S.C. § 1346(b); *Meyer*, 510 U.S. at 478; *Carlson v. Green*, 446 U.S. 14, 23 (1980); *see also Conrad v. United States*, 447 F.3d 760, 767 (9th Cir. 2006). Accordingly, California law applies to determine the resolution of Plaintiffs' claims of intentional infliction of emotional distress and negligent infliction of emotional distress.

**A. Intentional Infliction of Emotional Distress**

In order to state a claim for intentional infliction of emotional distress (IIED), Plaintiffs must demonstrate: (1) that Defendant's conduct was extreme and outrageous with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) that Plaintiffs have in fact suffered severe or extreme emotional distress; and (3) that Defendant's outrageous conduct actually and proximately caused the emotional distress. *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (Cal. 2009).

To meet the first element of an IIED claim, a plaintiff must allege conduct by the Defendant that is "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.* (quoting *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1001 (Cal. 1993)). Because this egregious conduct must be directed toward the plaintiff, the plaintiff must generally be present at the time of the conduct, and the defendant must know that the plaintiff is present. *Christensen v. Super. Ct.*, 54 Cal. 3d 868, 905-06 (Cal. 1991). The allegedly egregious conduct in this case includes the Defendant watching JRGF as a result of his suspicious activity, questioning him, and requesting his identification. (FAC ¶¶ 14-47.) As alleged, this legitimate investigative conduct of CBP agents is within the bounds of that tolerated in a civilized community because it satisfies constitutional scrutiny. *See, e.g.*, *Terry v. Ohio*, 392 U.S. 1, 22 (1968) ("[A] police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest.").

Even if Plaintiffs presented sufficient facts to show that Defendant's conduct was egregious, Plaintiffs fail to state a claim upon which relief can be granted because they were not present at the time the alleged incidents occurred. For example, in *Christensen*, the California Supreme Court held that the parents of the decedent failed to state a claim for IIED because they were not present when the mortuary and crematory workers allegedly mishandled their son's remains. 54 Cal. 3d at 877-89, 903. The court reasoned that it was insufficient to allege in the complaint only that the conduct was intentional and outrageous, and that it was "substantially certain to cause extreme emotional distress to relatives and close friends of the deceased." *Id.* at 903. Just as the parents of the deceased were not present at the time of the alleged misconduct in *Christensen*, Plaintiffs in the instant case were not present when the CBP agents allegedly harassed and caused physical harm to JRGF. (FAC ¶¶ 14-15, 22, 28-29, 35-42.) Accordingly, because Plaintiffs were not present when the alleged harm occurred, they also fail to state sufficient facts alleging that Defendant's conduct proximately and actually caused any emotional harm.

Furthermore, Plaintiffs did not sufficiently plead that they suffered severe or extreme emotional distress as a result of Defendant's conduct. The California Supreme Court has required plaintiffs to meet a high standard to properly allege severe emotional distress. *Wong v. Tai Jing*, 189 Cal. App. 4th 1354, 1376 (Ct. App. 2010) (quoting *Hughes*, 46 Cal. 4th at 1051). In *Hughes*, for example, the

California Supreme Court found that the plaintiff's claims that she "suffered discomfort, worry, anxiety, upset stomach, concern, and agitation" as a result of the defendant's alleged sexual harassment did not constitute severe emotional distress. 46 Cal. 4th at 1051. Similar to the symptoms of emotional distress alleged in *Hughes*, Plaintiffs in this case claim that they "live in constant fear" and that they have become "angry, [and] discouraged and feel[] helpless." (FAC ¶ 47.) Although Plaintiffs were likely troubled by the alleged conduct by CBP officials, the First Amended Complaint fails to state sufficient facts to show that Plaintiffs have suffered severe emotional distress under California law. Therefore, Plaintiffs fail to state a claim for IIED upon which relief can be granted.

**B. Negligent Infliction of Emotional Distress**

Under California law, a claim of negligent infliction of emotional distress (NIED) is not an independent tort, but is rather a tort claim for negligence. *Potter*, 6 Cal. 4th at 984. Plaintiffs must plead sufficient facts to meet the traditional negligence elements of duty, breach of duty, causation, and damages. *Id.*; *Wong*, 189 Cal. App. 4th at 1377. There are three theories of recovery for emotional distress in negligence cases: (1) parasitic damages; (2) bystander; and (3) direct victim. *Robinson v. United States*, 175 F. Supp. 2d 1215, 1224 (E.D. Cal. 2001).

*1. Parasitic Damages Theory*

A plaintiff may recover damages for emotional distress in a negligence action as parasitic to damages for physical injury. *Potter*, 6 Cal. 4th at 981. Because parasitic damages result from fear of future harm attributable to the plaintiff's physical injury, actual physical harm is required. *See id.*; *Macy's Cal., Inc. v. Super. Ct.,* 41 Cal. App. 4th 744, 756 (Ct. App.1995). Plaintiffs in the instant case have not alleged any physical injury resulting from Defendant's conduct. (FAC ¶¶ 60-61.) Therefore, they have not properly pleaded facts to support a claim for NIED under the parasitic damages theory.

*2. Direct Victim Theory*

Under the direct victim theory of NIED, a plaintiff's claim of emotional distress is based upon the violation of a duty owed directly to the plaintiff. *Wooden v. Raveling*, 61 Cal. App. 4th 1035, 1038 (Ct. App. 1998). Without a special duty recognized by law, law enforcement officers do not owe a duty to individual citizens, but rather to society at large. *Catsouras v. Dep't of Cal. Hwy. Patrol*, 181 Cal.

App. 4th 856, 877 (Ct. App. 2010). Accordingly, Defendant does not owe a duty of care to Plaintiffs simply because they are individual citizens.

California follows the public duty rule, which permits a "'narrow exception' for unusual police conduct that creates a 'special relationship' between the police officer and an individual member of the public.'" *Id.* (quoting *Adams v. City of Fremont*, 68 Cal. App. 4th 243, 275-77 (Ct. App. 1998)). Few courts have imposed a special duty on law enforcement officials and only in narrow circumstances, *Adams*, 68 Cal. App. 4th at 279-80, such as where an officer has induced an individual's detrimental reliance, *Johnson v. County of Los Angeles*, 143 Cal. App. 3d 298 (Ct. App. 1983), placed an individual in danger, *Carpenter v. City of Los Angeles*, 230 Cal. App. 3d 923 (1991), or "lulled an individual into a false sense of security and then withdrew essential safety precautions." *Mann v. California*, 70 Cal. App. 3d 773 (Ct. App. 1977). However, Plaintiffs have failed to allege any facts to indicate that the CBP agents owed them a special duty under this rule.

Moreover, even if there is no special relationship, Plaintiffs have failed to present any facts to demonstrate that Defendant owes them a duty under the *Rowland* factors. *See Catsouras*, 181 Cal. App. 4th at 881. Instead, Plaintiffs have simply alleged that because Defendant owed a duty not to harm their son JRGF, Defendant also owed them a duty to not cause them emotional distress. (FAC ¶¶ 60-61.) This is a mere legal conclusion which is insufficient to properly allege that Defendant owed Plaintiffs a special duty under California law. Consequently, Plaintiffs fail to state a cause of action under the direct victim theory of NIED.

### *3. Bystander Theory*

Under the bystander theory of NIED, a plaintiff may recover damages for emotional distress caused by observing the negligently inflicted injury of a third person only if he: (1) is closely related to the victim; (2) is present at the scene of the incident at the time the injury occurs and is contemporaneously aware that it is causing injury to the victim; and (3) as a result suffers serious emotional distress. *Thing v. La Chusa*, 48 Cal. 3d 644, 667-68 (Cal. 1989). In order to recover for NIED, Plaintiffs must allege facts to show that they contemporaneously understood the incidents as causing injury to JRGF. *Bird v. Saenz*, 28 Cal. 4th 910, 916-17 (2002). For example, in *Thing*, a mother who learned from a third party that her son had been hit by a car and immediately rushed to the scene of the accident could

not recover for NIED.  48 Cal. 3d at 647-48, 669.  Even though she allegedly suffered "great emotional disturbance, shock, and injury to her nervous system," the court explained that recovery was not permitted because she was not present at the scene of the accident and she did not know that her son was being injured at the time.  *Id.*

Like the mother in *Thing*, Plaintiffs are closely related to the alleged victim, their son JRGF, and they allegedly suffered "extreme mental and emotional distress."  (FAC ¶¶ 60-61.)  However, Plaintiffs have failed to state a claim for NIED because they were not present at the scene of the incident at any time that the CBP agents allegedly physically harmed JRGF just as the mother in *Thing* was not present when her son was injured.  In fact, Plaintiffs only learned about each incident where JRGF was allegedly injured after the agents had already left the scene.  (FAC ¶¶ 14-15, 22, 28-29, 35-42.)  On occasions where they were present, the CBP agents acted within the scope of their legitimate investigative duties by questioning JRGF and requesting his identification.  (FAC ¶¶ 16, 23-25, 30, 33, 41.)  Even if this conduct were negligent and the CBP agents could have reasonably foreseen that this could cause Plaintiffs to worry, Plaintiffs have failed to allege sufficient facts to demonstrate that they suffered serious emotional distress.  *See Thing*, 48 Cal. 3d at 667.  Accordingly, as pleaded in the First Amended Complaint, Plaintiffs have not stated sufficient facts to support a claim for NIED under a bystander theory.

## IV.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion to dismiss with leave to amend.  Plaintiffs have thirty (30) days to submit an amended Complaint correcting the deficiencies noted herein.  Failure to do so will result in the Court's dismissal of this case.

IT IS SO ORDERED.

DATED:  January 23, 2012

_____
Hon. Anthony J. Battaglia
U.S. District Judge